IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHEN V. KOLBE | * | |
| v. | * | Civil Case No. CCB-10-1349 |
| BALTIMORE COUNTY, MARYLAND | * | |
| | * | |

\*\*\*

## **MEMORANDUM**

Now pending is the motion for preliminary injunction filed on behalf of plaintiff Stephen V. Kolbe seeking to enjoin enforcement against him of Baltimore County Zoning Regulation ("BCZR") 450.4.14 governing the size of temporary signs, including political signs, that can be posted in residential areas of the County. In particular, Mr. Kolbe complains about the enforcement of an eight square-foot limit that was applied to preclude his posting of a 32 square-foot sign supporting a Republican candidate for governor on the corner of a lot containing his home, which is at the intersection of Dulaney Valley Road and Saint Francis Road.[1] The issues have been fully briefed and oral argument was heard on August 6, 2010. For the reasons that follow, the motion will be denied.

The standard for granting a preliminary injunction is not disputed by the parties. As recently clarified by the Supreme Court, the plaintiff must show (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; (4) "that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, ___ U.S. __, 129 S. Ct. 365, 374 (2008); *see also Real*

---

1 Mr. Kolbe's Verified Complaint seeks injunctive relief as to BCZR 450.7.F, 450.4.13, and 450.4.14. At least for purposes of preliminary relief, only the enforcement of 450.4.14 appears justiciable and is properly to be considered

*Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *rev'd on other grounds*, 130 S. Ct. 2371 (2010). Thus, the legal merit of Mr. Kolbe's claim is first to be analyzed.

Again, the parties largely agree on the test to be applied. The first question is whether the regulation (in this case, the size limit) burdens any speech. *Arlington*, 983 F.2d at 593. As the parties agree that it does, the court must next determine whether the size limit imposes a content-neutral or a content-based restriction. *Id.* The County asserts that the regulation is content-neutral, and therefore subject to intermediate scrutiny, but concedes that if it is content-based, the regulation would be subject to strict scrutiny, which it would not survive. If the regulation is content-neutral, the court must decide "whether the [size] limit serves any substantial interest of [Baltimore] County . . . whether the County narrowly tailored the [size] limit to further this stated interest . . . [and] whether the [size] limit leaves open ample alternative means for communicating the desired message." *Id.*; *see also Bell v. Baltimore Cnty.*, 550 F.Supp.2d 590, 592 (D. Md. 2008) (applying analysis to durational limits and political campaign signs).

As noted, the first key issue dividing the parties is whether the size limit regulation is content-based or content-neutral. The County argues that the regulation is content-neutral, because the same size limits apply to all "temporary" signs. First, the BCZR defines "temporary sign" to mean "a sign constructed of cloth, fabric or other lightweight material, with or without a structural frame, that is intended to display a message for a limited period of time. A 'portable sign' shall not be considered a 'temporary sign' for the purposes of these regulations." (County Resp. App. 22.) It then provides a "Table of Sign Regulations" for temporary signs, identifying six categories: construction (450.4.12); personal message (450.4.13); political campaign (450.4.14); real estate

---

at this time. *See Arlington Cnty. Republican Comm. v. Arlington Cnty.*, 983 F.2d at 587, 596 (4th Cir. 1995).

(450.4.15); special event (450.4.16); and commercial special event (450.4.17). (*Id.* App. 52-54.) While there are some differences on matters such as structural type and permit requirements, the "maximum area/face" limit at issue here is identical for all categories of temporary signs.[2]

Mr. Kolbe argues that the regulation is content-based because there are six categories of temporary signs, and the inspector must review the contents of the sign before deciding whether to issue a citation under 450.4.14 or under one of the other five category designations. This is not persuasive, however, because the size limitation, which is the identified burden on free speech, applies regardless of the content of the temporary sign or the subsection by which it is identified. Accordingly, the regulation appears to be content-neutral and therefore subject to intermediate scrutiny.

The next question is whether the size limit serves any substantial interest of Baltimore County. The County has asserted both traffic safety and aesthetics as its interests; these have been recognized by the courts as "substantial governmental goals." *Arlington*, 983 F.2d at 594, *citing Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984). As the Supreme Court has explained:

> While signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs-just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise.

---

2 That limit is "50 square feet in OR-1, OR-2, O.T., S-E, B.L., B.M., B.R., M.R., M.L.R., M.L., M.H., C.B., B.L.R.; 8 square feet in any other zone except 50 square feet is permitted on an unimproved lot." (Verified Cplt., Ex. B, Table of Sign Regulations.)

*City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994). The County argues that smaller signs are less likely to impede a motorist's view of traffic, otherwise distract a driver, or "clutter" the visual landscape.[3] Mr. Kolbe does not dispute that these are substantial governmental interests, but contends the restrictions are not narrowly tailored to serve those interests.

A regulation is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 782-83 (1989). Size limitations, so long as they are applied regardless of content, have been upheld under various circumstances as valid exercises of the legislative power. *See, e.g., Prime Media Inc. v. City of Brentwood*, 398 F.3d 814, 821-22 (6th Cir. 2005); *Baldwin v. Redwood City*, 540 F.2d 1360, 1368-69 (9th Cir. 1976); *Kennedy v. Avondale Estates*, 414 F.Supp.2d 1184, 1208 (N.D. Ga. 2005); *Sugarman v. Village of Chester*, 192 F.Supp.2d 282, 295 (S.D.N.Y. 2002). No case invalidating a content-neutral size restriction has been cited by Mr. Kolbe.[4]

Finally, the regulation's validity depends on its leaving open "ample alternative means for communicating." Arlington, 983 F.2d at 593. Recognizing that the regulation burdens the rights of both homeowners and candidates, the alternatives open to both must be considered. For candidates, alternatives such as public speeches, canvassing, advertising, and posting larger signs in business areas are possible options. While these might not be sufficient if signs were completely forbidden, for both candidates and homeowners there is also an option of posting as many political campaign

---

3 The parties disagree whether the particular sign erected by Mr. Kolbe in fact interfered with drivers' ability to see other traffic while entering Dulaney Valley Road from St. Francis. The court will not attempt to resolve that disagreement based on the pictures provided. (See County Resp. App. 64-65.)

4 Mr. Kolbe advances a subsidiary argument that the regulation is not narrowly tailored because a larger sign may be erected on an unimproved lot, thus favoring "landowners" over "homeowners." At this stage of the proceeding, however, it is at least reasonable to assume that unimproved lots are less likely to be located in the residential areas

signs as they would like for as long as they like. Following *Arlington*, which struck down a two-sign limit, and *Bell*, which invalidated a durational limit on political campaign signs, the County does not limit the number of signs nor is it enforcing the durational restriction in 450.7.F, according to the affidavits submitted by counsel. (County Resp. App. 4 and 7.) Thus it appears that enforcement of the size limit leaves open sufficient alternatives for communicating a political campaign message to pass the constitutional test.

Mr. Kolbe is correct that regulations generally prohibiting signs from interfering with traffic safety, or requiring that signs in disrepair be removed, could address some of the concerns the County advances. Enforcement, however, would be difficult and would require much more discretionary decision-making on the part of county inspectors, which in itself could pose a First Amendment danger. The balance drawn here by the County, whether or not it is perfectly drawn, appears to promote substantial government interests that would be achieved less effectively absent the regulation. Accordingly, the plaintiff has not yet shown he is likely to succeed on the merits of his constitutional claim.

Failure of Mr. Kolbe to satisfy the first prong of the *Winter* test is a sufficient basis for the court to deny preliminary relief. If the additional prongs are considered however, Mr. Kolbe has shown some degree of irreparable harm, in that he cannot communicate his political message in the manner he believes most effective. It is important to note, however, that other options remain open to him, including several smaller signs; certainly his First Amendment rights have not been completely foreclosed. Further, the equities are roughly in balance, as Baltimore County also would be harmed if the size limitation for all political signs was eliminated and it could not as effectively

---

where the County's aesthetic and safety concerns are greater.

promote traffic safety and lessen visual "clutter."  Similarly, the public interest does not heavily favor either side of the issue.

For all the above reasons, and appreciating the thoughtful arguments of both Mr. Kolbe and the County, I do not find that the requirements for issuance of a preliminary injunction have been met.  The motion will be denied by separate Order.

| | |
|---|---|
| __August 11, 2010__ | _____/s/_____ |
| Date | Catherine C. Blake |
| | United States District Judge |